UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

LING CHEN,

                         Plaintiff,

                    v.

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

**MEMORANDUM & ORDER**
15-CV-1724

----------------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

      Plaintiff Ling Chen ("Plaintiff") brings this action under 42 U.S.C. § 405(g), seeking judicial review of a determination by the Social Security Administration ("SSA") finding that Plaintiff was overpaid $11,029.00 in social security disability insurance benefits ("DIB") for the time period of December 2008 through May 2012. The Commissioner of the SSA ("Commissioner") moved for judgment on the pleadings (Dkt. 12); Plaintiff filed a response in opposition (Dkt. 20); and the Court held oral argument on March 7, 2017. At oral argument, the Court granted the Commissioner's motion from the bench, and noted that a written order would follow. This is that order.

## BACKGROUND

      In the five calendar years before 2008, Plaintiff Ling Chen's highest earnings in a single calendar year were $44,555.98, which she earned in 2005. (R. 82.)[1] Chen began a new job in September 2007 at a salary of $70,000 per year. (R. 32.) However, in April 2008, after receiving only three months' pay, Chen sustained a workplace injury that rendered her unable to continue

---

[1] All citations to "R" refer to the official record of Chen's administrative proceedings before the SSA. (Dkt. 11.)

working. (R. 32.) On the basis of that injury, Chen filed for workers' compensation benefits under New York law and DIB under the Act. (R. 22.) In or around August 2008, Chen began receiving workers' compensation benefits at a rate of $500 per week, and she continued to receive those benefits until April 15, 2011, when her weekly benefit was reduced to $448.72 per week. (R. 46, 54, 56, 59, 62, 64, 69.) In July 2011, Chen began receiving DIB pursuant to the Act, starting with a lump-sum payment of $37,670.40 covering the period of December 1, 2008 (the start of Chen's entitlement period for disability insurance benefits) through June 30, 2011 (the last month preceding the month in which she was determined eligible). (R. 77-78.) These disability insurance benefits were initially calculated based on an annual salary of $70,000 (the salary that Chen earned for the first three months of 2008) and did not reflect any offset for the workers' compensation benefits that Chen had received for the period of April 1, 2008 through December 1, 2008. (*Id.*)

At some point, the SSA determined that it was overpaying on Chen's DIB. By letter dated January 11, 2012, the SSA informed Chen that she was being overpaid as a result of the SSA (i) failing to apply an offset to Chen's DIB based on her receipt of workers' compensation benefits, and (ii) calculating her benefits based on an annual salary of $70,000, which she had earned for only a few months in 2008. (R. 21.)[2] Chen sought reconsideration of the SSA's determination of overpayment, and the SSA scheduled an in-person hearing before an administrative law judge ("ALJ"). (R. 21.) On June 20, 2013, Plaintiff appeared and testified at the hearing, in which she acknowledged that she had been paid at a salary of $70,000 per year for only the first three months of 2008, and acknowledged that she been receiving workers' compensation benefits under New York law for the period starting April 1, 2008. (R. 32-25.)

---

[2] The ALJ's decision states that the SSA notified Plaintiff of the overpayment by letter dated January 10, 2010. Given the relevant timeline, the ALJ's reference to the year 2010 is obviously a typographical error, and the correct year must be 2012.

On March 11, 2014, based on written submissions and hearing testimony, the ALJ issued a determination that Plaintiff had been overpaid, and was liable for the repayment of, $11,029.00 in disability insurance benefits. (R. 21-23.) Plaintiff timely appealed the ALJ's determination to the Appeals Council of the SSA, and, on January 30, 2015, the Appeals Council issued an order affirming the ALJ's determination that Plaintiff had been overpaid $11,029.00. (R. 7-8.) Importantly, however, the Appeals Council noted that the issue of waiver—*i.e.*, whether Plaintiff was entitled under the Act to keep the overpaid amounts based on a doctrine of waiver—was not raised before the ALJ. (R. 7.)

On March 30, 2015, Plaintiff filed this action seeking review of the Appeals Council's order pursuant to 42 U.S.C. § 405(g). (Dkt. 1.) For the reasons that follow, the Commissioner's motion for judgment on the pleadings is GRANTED.

## STANDARD OF REVIEW

In reviewing an SSA determination finding an overpayment of disability insurance benefits, a federal district court must determine "whether the SSA's decision was supported by substantial evidence and based on a proper legal standard." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). The term "substantial" does not require that the evidence be overwhelming, but rather that the evidence must be "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether the Commissioner's findings were based on substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which contradictory inferences can be drawn." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)

(per curiam)). A district court's role in reviewing the Commissioner's final decision is limited, because "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark*, 143 F.3d at 118. Thus, as long as "the [ALJ] applied the correct legal standard" and "the ALJ's findings are supported by evidence that a reasonable mind would accept as adequate, the ALJ's decision is binding on the court." *Petre v. Comm'r of Soc. Sec.*, No. 13-CV-2657, 2015 WL 6971212, at *3 (E.D.N.Y. Nov. 20, 2015).

## ANALYSIS

The Commissioner does not dispute that Plaintiff was entitled to receive disability insurance benefits from December 2008 through May 2012. Rather, the Commissioner argues that Plaintiff received an overpayment of $11,029.00 in DIB for the period December 2008 through May 2012. (USA Br. (Dkt. 13) 12-15.) Plaintiff asserts that she did not receive any such overpayment. (Pl.'s Aff. (Dkt. 20) at 5.)

The rate at which Plaintiff was entitled to DIB is based on her annual earnings and governed by the Act. (Dkt. 13.) The Act provides that an individual's disability insurance benefit for a given month shall be equal to the individual's "primary insurance amount." 42 U.S.C. § 423(a)(2)(B). The Act and related regulations define a person's "primary insurance amount" based on three computation methods that incorporate a person's "average indexed monthly earnings" ("AIME"). 42 U.S.C. §§ 415(a)(1)(A) & (B)(ii); 20 C.F.R. § 404.204(b)(1). "An individual is entitled to the highest primary insurance amount that can be computed, considering all possible computation methods." *Petre v. Comm'r of Social Sec.*, 2015 WL 6971212, at *3 (E.D.N.Y. Nov. 9, 2015) (citing 20 C.F.R. § 404.204(a)).

Furthermore, where an individual is receiving both workers' compensation benefits under State law and DIB under the Act, the Act directs the SSA to apply an offset to the individual's DIB

to account for the workers' compensation payments the person has received. 42 U.S.C. § 424a(a). Specifically, the Act provides that an individual's monthly disability insurance benefit shall be reduced by the amount by which the individual's total disability payments[3] would exceed eighty percent (80%) of her "average current earnings." 42 U.S.C. § 424a(a). The phrase "average current earnings," in turn, is defined as the largest of three computations: (1) the person's "average monthly wage" as determined under 42 U.S.C. § 415 used for purposes of computing the individual's disability insurance benefit under Section 223 of the Act; (2) one sixtieth (1/60) of the total of the individual's wages and earnings from self-employment for the five consecutive calendar years after 1950 for which the wages and earnings from self-employment were highest; or (3) one twelfth (1/12) of the total of the individual's wages and earnings from self-employment for the calendar year in which the individual became disabled and the five years immediately preceding that year. 20 C.F.R. § 404.408(c)(3).

In the proceedings below, the SSA determined that Plaintiff's "average current earnings" ("ACE") was largest under the third prong of 20 C.F.R. § 404.408(c)(3), which computes an individual's ACE by calculating one twelfth (1/12) of the individual's highest earnings in a single calendar year in the five years preceding the year in which the person was disabled ("third prong of § 404.408(c)(3)"). (R. 82.) When applying this one-twelfth method, the SSA used Plaintiff's earnings in 2005 ($44,555.98), which yielded an ACE value of $2,969.60. (R. 82.) The SSA then used that ACE of $2,969.60 to determine that Plaintiff had been overpaid $11,029.00 in DIB during the period of December 2008 through May 2012 by virtue of her receiving both workers' compensation benefits under New York law and DIB under the Act. (R. 22; R. 7-8.)

---

[3] In Plaintiff's case, the amount of her total disability payments was the sum of her workers' compensation benefits and DIB calculated using the AIME method.

In this action, Plaintiff challenges the SSA's determination of overpayment on a single narrow ground based on the SSA's calculation of Plaintiff's DIB under the third prong of § 404.408(c)(3).[4] Plaintiff asserts that, when calculating her "average current earnings"—which in turn was used to compute the offset corresponding to her workers' compensation benefits—the SSA should have used Plaintiff's monthly earnings in the first three months of 2008—when she was working at Reuters and expected to earn $70,000 for the entire year—rather than her average monthly earnings for the 2005 calendar year, in which her salary for the entire year was $44,555.98. (Dkt. 20 at 4.) In support of this position, Plaintiff places emphasis on the word "current" in "average current earnings," arguing that her "average *current* earnings" should be computed by dividing her earnings in the first three months of 2008 by three. (*Id.* (emphasis added).) Under Plaintiff's method, her average current earnings would equal $17,179.04 (the amount she made in the first three months of 2008) divided by three, or $5,726.35, which, according to Plaintiff, would eliminate any overpayment. (Dkt. 20 at 4.)

As the Court explained in oral argument, however, there simply is no statutory or regulatory basis for Plaintiff's proposed method of calculating her average current earnings, however intuitive her method may be. To the contrary, the plain terms of the regulation establish that the SSA's method of determining Plaintiff's average current earnings—*i.e.*, by calculating one twelfth of Plaintiff's highest earnings *in a single calendar year* in the five years preceding the year in which the person was disabled—was correct. 20 C.F.R. § 404.408(c)(3) (emphasis added). Based on the SSA's application of the third prong of § 404.408(c)(3), the Court finds that there is substantial evidence to

---

[4] Plaintiff does not contend that the SSA should have applied the methodology provided for under either of § 404.408(c)(3)'s other two prongs.

support its calculation of overpayment to Plaintiff in the amount of $11,029.00. Accordingly, the Court grants the Commissioner's motion for judgment on the pleadings.

Before concluding, the Court takes a moment to remind Plaintiff, who is proceeding *pro se*, of two points that were raised during oral argument.

First, neither the SSA's determinations below nor this Court's order addressed the issue of whether the SSA should waive its right to recover the overpaid amounts. Indeed, as the Commissioner explained in a letter filed on the docket in this case, an overpaid recipient of DIB "can request a waiver of recovery of all or part of an overpayment of disability insurance benefits at any time." (Dkt. 24 at 2 (citing SSA Program Operations Manual System GN § 02250.310.1.A).) The request should be made in writing using Form SSA-632-BK and filed at the recipient's local SSA office. (*Id.*) To the extent Plaintiff believes she qualifies for a waiver of recovery of the overpaid amounts, the proper procedure would be to seek that waiver from the SSA.

Second, this order is limited to affirming the SSA's determination that Plaintiff was overpaid $11,029.00 in DIB as a result of (i) failing to apply an offset to Chen's DIB based on her receipt of workers' compensation benefits, and (ii) calculating her benefits based on an annual salary of $70,000. This Court expresses no opinion on whether the SSA, in the months and years since making its determination of overpayment, has deducted too much money from Plaintiff's ongoing disability insurance payments in order to recover the overpaid amounts. To the extent Plaintiff believes the SSA has over-collected in that regard, she should raise that issue with the SSA in the first instance.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Commissioner's motion for judgment on the pleadings. The Clerk of Court is respectfully requested to close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: Brooklyn, New York
March 31, 2017